UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTINE C. F.[1], | Case No. 2:17-cv-09215-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christine Camille Ford ("Plaintiff") filed a Complaint on December 27, 2017, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on November 21, 2018. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## BACKGROUND

Plaintiff filed her application for DIB on August 8, 2013, alleging disability commencing on January 18, 2011. Administrative Record ("AR") 191-95. On November 30, 2015, Plaintiff, represented by counsel, appeared at a hearing before an Administrative Law Judge ("ALJ"). AR 17. The matter was continued to allow Plaintiff to supply more medical records. Id. On June 27, 2016, the ALJ held another hearing. AR 17, 32-48. Counsel declared Plaintiff nonessential for the hearing and constructively waived her right to appear. AR 17, 34. Medical expert ("ME") Dr. Glenn E. Griffin testified as did vocational expert ("VE") Gayle Marin. AR 32-47. On July 20, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. AR 17-27. The ALJ found Plaintiff had engaged in substantial gainful activity between April 1, 2014, through January 25, 2015. AR 19. However, there were continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity, so the ALJ limited the remaining findings in the decision to those periods. AR 20. The ALJ found Plaintiff had the following severe impairments: bipolar disorder and history of polysubstance abuse. AR 20. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform a full range of work, limited only as follows: "[Plaintiff] is limited to no more than frequent detailed and complex tasks, with no more than frequent interaction of brief and casual nature with coworkers, supervisors[,] and the public." AR 20, 22.

The ALJ determined Plaintiff could perform her past relevant work as a merchandise displayer as actually and generally performed. AR 25. The ALJ also determined that, in addition to her past relevant work, Plaintiff could perform other jobs existing in the national economy. AR 26. Considering

Plaintiff's age as a "younger individual," her education, work experience, and RFC, and the VE's testimony, the ALJ concluded Plaintiff could also perform the jobs of linen room attendant, hospital cleaner, housekeeping cleaner, and salvage laborer. AR 26-27. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision. AR 27.

Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This action followed.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the

4

past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he or she is disabled, or he or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he or she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present five[2] disputed issues (Jt. Stip. at 8, 12-13):

Issue No. 1: Whether the ALJ properly considered Plaintiff's symptoms and limitations associated with her bipolar condition and ability to sustain work activity, including whether the ALJ properly:

(a)     considered Plaintiff's subjective complaints;

(b)     evaluated the medical opinion evidence in assessing the RFC; and

---

[2]  As Defendant notes, the first issue presents three distinct issues. Jt. Stip. at 12-13.

(c)     considered a third-party function report;

Issue No. 2: Whether the ALJ properly determined Plaintiff could perform her past relevant work; and

Issue No. 3: Whether the ALJ properly determined Plaintiff could perform other jobs.[3]

## A.     Plaintiff's Subjective Symptom Complaints

### 1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons' for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

---

[3]  Apart from issue 1(b), Plaintiff failed to raise any of these challenges before the Appeals Council. AR 294-97; See Steward v. Astrue, 2012 WL 4210624, at *4 (D. Or. Sept. 19, 2012) (claimant waived argument not raised before Appeals Council).

2. <u>Analysis</u>

In Issue 1(a), Plaintiff argues the ALJ improperly discounted her subjective complaints. Jt. Stip. at 9, 11, 33.

Plaintiff asserted in a disability report her bipolar disorder limited her ability to work and claims she stopped working because of her condition and because she was laid off. AR 215.

Plaintiff also completed a function report in which she described symptoms from her bipolar disorder, such as wild swings of mania and suicidal depression. AR 226, 232-33. She alleged her condition affects her memory, problem-solving, understanding, concentration, and ability to complete tasks and work with others. AR 226-27, 231-32. She explained she is a male-to-female transgender in transition, and that she feels ostracized and rejected in the workplace, and generally finds acceptance very difficult. AR 226, 233. She also explained that she is "somewhat" paranoid, and has difficulty sleeping. AR 226. Her condition has caused her to watch more television and become isolated and withdrawn from friends. AR 230. She has difficulty being around people she knows because they anger and irritate her. AR 231. She must be told spoken instructions at least three times before she can understand and remember them. <u>Id.</u> She does not have any respect for, or trust in, authority figures. AR 232. She doesn't handle stress well; she tries to "self-talk" but she ends up exploding in anger. AR 232-33.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her allegations "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not "entirely consistent with the medical evidence and other evidence in the record" (AR 22) because Plaintiff's subjective complaints were not fully consistent with: (1) the objective clinical findings; (2) gaps in treatment; (3) her work history; (4) stable treatment; and (5) her daily activities. AR 22-24. As

7

explained below, the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective symptom complaints.

First, the ALJ discounted Plaintiff's symptoms because the objective evidence failed to show she is unable to perform "all work activity" as she alleged.[4] AR 23. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example: (1) Plaintiff's August 2011 mental status examination showed her mood was euthymic with no signs of depression or manic process, and other clinical findings were unremarkable (AR 440); (2) progress notes indicated she was sad and anxious at times, but mental status exams remained largely within normal limits (AR 37, 42, 408-12, 440-48); (3) although Plaintiff was admitted to the hospital for stabilization after leaving her abusive alcoholic boyfriend, within 24 hours she was no longer suicidal and did not meet the hold criteria (AR 319-21 (Plaintiff "states she does not need to be here"; "'I realize I'm not that sick'")); and (4) after release from the hospital, subsequent mental status exams where normal, showing stable condition (AR 389-91 (Plaintiff appears "quite stable" and "entirely under control and well managed"), 411 ("[Plaintiff] feels [her medications are] very effective in stabilizing her mood, and she wants to continue them."), 412). The ALJ properly considered the inconsistency between the medical evidence and Plaintiff's subjective symptom complaints as

---

[4] Plaintiff does not discuss any of the reasons the ALJ discounted her subjective complaints except a brief mention of this first reason (Jt. Stip. at 11, 32-33), even after the other reasons were raised by the Commissioner (id. at 12-13). See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

one of at least four valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, the ALJ discounted Plaintiff's subjective symptoms because there were gaps in treatment and little overall treatment. AR 22-23, 334-36, 408-12, 422-48; see Marsh v. Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (ALJ properly considered treatment gap in assessing claimant's symptoms); Burch, 400 F.3d at 681 (ALJ properly relied on three- to four- month treatment gap in discrediting claimant's testimony). This included the lack of any treatment from Plaintiff's alleged onset date in January 2011 to August 2011. AR 22, 336-38, 438-41. See Bruton v. Massanari, 268 F.3d 824, 826, 828 (9th Cir. 2001) (allegation of disabling pain properly discounted in part because nine months passed after alleged onset date before claimant sought treatment).

Third, the ALJ found that Plaintiff stopped working for reasons other than her condition, namely because she was laid off. AR 22-23. The ALJ also noted that Plaintiff alleged her disability onset date was the same date she was laid off. AR 22-23, 211, 215-16. Burton, 268 F. 3d at 826, 828 (subjective complaints properly discounted in part because claimant said "he left his job because he was laid off," continued to work for a week and a half, and he alleged a disability onset date the same as the date he was laid off); Brackett v. Comm'r Soc. Sec. Admin., 468 F. App'x 754, 755 (9th Cir. 2012) (ALJ properly rejected subjective limitations in part because claimant stopped working when he was laid off and said that was the reason he stopped working). Moreover, as mentioned, the ALJ found Plaintiff continued to work at the substantial gainful activity level for over 10 months during the time she alleged she was disabled. AR 19-20, 282; Bruton, 268 F.3d at 826, 828; Rothery v. Berryhill, 684 F. App'x 664, 664 (9th Cir. 2017) (subjective complaints properly discounted in part because claimant worked during the period in which he alleged he was disabled); 20 C.F.R. §§ 404.1529(a) & (c)(3);

9

416.929(a) & (c)(3) (in evaluating symptoms, the Commissioner will consider a claimant's efforts to work and prior work record).

Fourth, the ALJ properly found Plaintiff's subjective complaints inconsistent with her stable condition under prescribed medical treatment. AR 23. "Impairments that can be controlled effectively with medication are not disabling." See Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see also Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled by medication). Indeed, the record shows Plaintiff responded favorably to her treatment, and, as the ALJ mentioned, progress notes did not indicate any change to her treatment regimen. AR 23, AR 46 (counsel's admission at hearing that "[Plaintiff] is controlled"), 48 (ME's testimony that Plaintiff is on medication and it seems to be effective), 408, 411, 437-39.

Fifth, the ALJ appears to have also relied on Plaintiff's daily activities in discounting Plaintiff's subjective complaints. AR 23. The ALJ states, on the one hand, that Plaintiff's activities do not prove her ability to perform work activity, but on the other hand, they do not support her subjective allegations of chronic pain and in ability to work. Id. This reasoning may not be sufficiently clear to support the finding. Moreover, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016.

Here, without reaching the issue, even if the ALJ erred in relying on this reason, if other "substantial evidence supporting the ALJ's conclusions" exists and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," any error is harmless and does not warrant reversal. Batson, 359 F.3d at 1195-97; Williams v. Comm'r Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination."). As there are at least four other bases for the ALJ's discounting of Plaintiff's subjective complaints, the Court does not consider the purported basis based upon inconsistency with activities of daily living.

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically, the conflict with objective medical evidence, gaps in treatment, work history, and stable treatment. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

**B.**   **Medical Opinion Evidence**

    1.   Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining

physicians." <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." <u>Id.</u> "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. <u>Carmickle v. Comm'r Sec. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 1164 (citation omitted).

2. <u>Analysis</u>

In Issue 1(b), Plaintiff contends that in evaluating the medical evidence and assessing the RFC, the ALJ should have afforded greater weight to her treating physician, Dr. Ali Aziz. Jt. Stip. at 9-12, 31-34. On September 17, 2013, Dr. Aziz completed a "mental disorder questionnaire form." AR 369-73. Dr. Aziz diagnosed Plaintiff with bipolar depression and gender identity disorder, noting she had a history of bipolar disorder and was status post sex-reassignment surgery in 2009. AR 369, 373. She indicated Plaintiff felt isolated and alienated, had few friends, had "significant" concentration problems, and had difficulty problem-solving and focusing. AR 372. In work or work-like situations, Dr. Aziz stated Plaintiff would have problems with: (1) persistence and pace; (2) interacting with co-workers and the public; and (3) completing multi-step tasks. AR 372. She also stated Plaintiff would be prone to frequent absenteeism but could manage funds on her own behalf. AR 372-73.

On December 27, 2013, Dr. Aziz completed a "report on individual with mental impairment." AR 375-81. She again indicated her bipolar disorder and

gender identity disorder diagnosis. AR 380. She made a handwritten notation that Plaintiff was "neatly groomed" and checked various boxes on a form checklist indicating Plaintiff's mental status signs and subjective symptoms. AR 375-78. Dr. Aziz also checked boxes indicating that Plaintiff had marked or extreme functional limitations, but could, nonetheless, manage benefit payments. AR 379-81. Although it is unclear, it appears Dr. Aziz also completed a "mental [RFC] assessment" attached to the report, indicating similar "moderate" and "marked" functional limitations. AR 374.

The ALJ assigned "little weight" to Dr. Aziz's opinion on Plaintiff's condition because it was: (1) unsubstantiated by largely benign clinical findings; (2) inconsistent with Plaintiff's treatment; and (3) overly reliant on Plaintiff's subjective complaints. AR 24.

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion. Jt. Stip. at 9-12, 31-34. Preliminarily, the Court notes the ALJ did not reject Dr. Aziz's opinion in its entirety. By assigning "little weight," the ALJ necessarily gave some consideration to the limitations assessed in the opinion. AR 24. Indeed, in fashioning the RFC, the ALJ took Plaintiff's mental limitations into account by restricting her to no more than frequent detailed and complex tasks, and no more than frequent interaction of a brief-and-casual nature with coworkers, supervisors, and the public. AR 22. To the extent the ALJ declined to accept the more-severe limitations opined by Dr. Aziz, those reasons are supported by the record.

First, Dr. Aziz's opinion was not supported by the objective clinical evidence. AR 23. Her extreme assessed limitations conflicted with the mild mental status examination findings and progress notes outlined above. See Batson, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ

need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."); Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."). As the ALJ mentioned, while progress notes indicated at times that Plaintiff was sad and anxious, Dr. Aziz's mental status examinations of Plaintiff were largely within normal limits. AR 23, 426-48. Notably, Dr. Aziz's progress note from December 2013 – the same month he completed the report and RFC assessment – reveals only mild findings. AR 374-81, 447-48. Despite Plaintiff's complaints at that time that "things have got a whole lot worse" and Dr. Aziz's notations that Plaintiff looked sad, unhappy, and appeared anxious, upon examination she found: (1) Plaintiff was communicative and had normal speech; (2) she showed signs of only "mild depression"; (3) her associations were intact and logical; (4) there were "no apparent signs of hallucinations, delusions, bizarre behaviors, or other indications of psychotic process"; (5) her thinking was logical and her thought content appropriate; (6) Plaintiff denied suicidal or homicidal ideas or intent; and (7) her insight and judgment were "fair." AR 447. The ALJ properly considered the conflict between Dr. Aziz's largely benign findings and her opinion. See Wilhelm v. Comm'r Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) (ALJ properly rejected doctor's opinion because it contradicted her own treatment notes); Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)).

Second, Dr. Aziz's opinion conflicted with Plaintiff's course of treatment. AR 24. As explained, there were large gaps in treatment. Also, her

14

condition was stable under medication treatment, and progress notes did not indicate the necessity of any change to this treatment. AR 23, 46-48, 380 (Dr. Aziz's recommended treatment: "medication, therapy"), 408, 411, 437-39. Accordingly, the ALJ properly relied on this factor. See Warre, 439 F.3d at 1006; Williamson v. Berryhill, 2017 WL 3701229, at *2 (C.D. Cal. Aug. 25, 2017) ("Presumably, if [claimant's condition was] as disabling as she claimed, common sense dictates that she would have . . . not simply continued to take the same medication that she had been taking, which were not working, for years."); Smith v. Astrue, 2009 WL 799174, at *12 (E.D. Cal. Mar. 24, 2009) (ALJ reasonably inferred that claimant must have experienced some improvement because she took the same medication for pain and mental health issues for two to five years; "otherwise, logic would suggest the initiation of a change in dosage, prescription, or treatment").

Third, and finally, the ALJ properly determined that Dr. Aziz's opinion relied heavily on Plaintiff's subjective complaints. AR 24. For example, the mental disorder questionnaire form requested "data and examples" for the section assessing Plaintiff's current level of functioning. AR 371. Dr. Aziz provided no data, and the examples she cited fall into areas Plaintiff could have only provided subjectively, such as problems interacting with others, feeling isolated and alienated, having few friends, and feeling overwhelmed. AR 371-72. In Dr. Aziz's "report on individual with mental impairment," she marked comments sections "NA" or left them blank. AR 375, 378-80; see Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Without the support of any data, objective evidence, or clinical findings, the ALJ logically determined that Dr. Aziz's opinion relied heavily on Plaintiff's subjective complaints. AR 24. As explained in the Court's analysis of Disputed

Issue No. 1(a), above, the ALJ properly discounted those complaints. The ALJ's reasoning is therefore supported by the record. <u>See, e.g.</u>, <u>Calkins v. Astrue</u>, 384 F. App'x 613, 614 (9th Cir. 2010) (doctor appeared to rely to a significant extent on claimant's subjective reporting because it was unlikely opinion could be based on relatively superficial testing); <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir. 1999) (disability opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" (quotations omitted)); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (same).

Accordingly, the ALJ provided legally sufficient reasons supported by substantial evidence for rejecting the extreme limitations outlined in Dr. Aziz's opinion, and the ALJ's analysis constituted a rational interpretation of the evidence. <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld."). The Court finds the ALJ did not err by assigning "limited" weight, but not wholly discounting, Dr. Aziz's opinion. Accordingly, reversal is not warranted.

**C.    Third Party Report**

1.    <u>Applicable Law</u>

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006)); <u>see also</u> 20 C.F.R. § 416.913(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). Such testimony is competent evidence and "cannot be disregarded without comment." <u>Bruce</u>, 557 F.3d at 1115 (quoting <u>Nguyen v. Chater</u>, 100 F.3d

1462, 1467 (9th Cir. 1996)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting law witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine, 574 F.3d at 694.

    2. Analysis

In Issue 1(c), Plaintiff presents a terse argument that the ALJ did not properly evaluate the third-party report from her friend, Rick Ardle ("Mr. Ardle"). Jt. Stip. at 12. Mr. Ardle submitted a third-party adult function report. AR 247-55. He described himself as "close friend" who has known Plaintiff for 10 years. AR 247. Mr. Ardle explained his observations of the effect Plaintiff's bi-polar disorder, depression, and mania, has on her ability to function and stated she is "definitely unable to work." AR 247-55. The ALJ noted that she was required to consider the third-part report and did so. AR 24. However, the ALJ declined to give it great weight because (1) Mr. Ardle was not "medically trained to make exacting observations"; (2) he was not a disinterested party by virtue of his relationship to Plaintiff; (3) his statements, like Plaintiff's, were not fully consistent with the medical evidence discussed in the decision; and (4) some of his statements supported the RFC as they attested to Plaintiff's range of activities and continued ability to perform basic tasks. AR 24-25.

Here, the ALJ improperly discounted the third-party report for the first two reasons. See Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (personal relationship with claimant not a valid reason to discount a third-party function report); Augg v. Colvin, 2016 WL 1388054, at *5 (W.D. Wash. Apr. 8, 2016) ("There is no requirement that a lay witness be 'medically trained to make exacting observations.' Nor should there be given that lay witnesses are by definition not medical professionals."); Earhart v. Colvin, 2015 WL 2368597, at *4 (D. Or. May 18, 2015) (noting Commissioner's concession that third-party's relationship to claimant and lack of medical

17

training were not valid reasons for rejecting testimony).

Nonetheless, any such errors are harmless because the latter two reasons are valid. See Valentine, 574 F.3d at 694 (error in rejecting lay testimony harmless because remaining reasons valid). First, Mr. Ardle's statements, similar to Plaintiff's, were not fully consistent with the medical evidence discussed above. AR at 24-25; see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness); Valentine, 574 F.3d at 694 (holding that when an ALJ properly rejects a claimant's subjective complaints, such a finding is a germane reason to reject the layperson's similar testimony).

Second, Mr. Ardle's observations about Plaintiff's ability to perform some tasks support the ALJ's RFC finding. See Pinegar v. Comm'r Soc. Sec. Admin., 499 F. App'x 666, 667 (9th Cir. 2012) (failure to provide reasons for rejecting third-party testimony harmless where consistent with ALJ's decision). For example, as the ALJ found in the RFC, Mr. Ardle confirmed that Plaintiff has no exertional restrictions. AR 22, 252-53. Further, Mr. Ardle stated Plaintiff : (1) is able to live alone; (2) is able to care for herself; (3) needs no reminders for personal care or taking medication; (4) is able to go out on her own, walk, drive, and use public transportation; (5) is able to take care of her personal finances; and (6) can do social activities, such go out to the movies, talk on the phone, and meet Mr. Ardle for dinner up to a daily basis. AR 247-51. The ability to complete these tasks supports the ALJ's decision. See Pinegar, 499 F. App'x at 667.

The ALJ did not err in her assessment of the third-party function report.

**D.    Past Relevant Work**

1.    Legal Standard

At Step Four of the sequential evaluation for disability determinations, the ALJ must determine whether, in light of the claimant's RFC, she can

18

return to substantial gainful activity performed in the past. 20 C.F.R. § 404.1520(e). The claimant has the burden of demonstrating that she can no longer perform her past relevant work either as actually performed <u>or</u> as generally performed in the national economy. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1166; <u>see also</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001) ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed <u>and</u> as actually performed") (emphasis in original).

The Dictionary of Occupational Titles ("DOT") is usually the best source for determining how past relevant work is generally performed. <u>Pinto</u>, 249 F.3d at 845-46. "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, and the claimant's own testimony." <u>Id.</u> at 845 (citing SSR 82-61, 1982 WL 31387 (Jan. 1, 1982)). In assessing a claimant's allegations, the ALJ is responsible for determining credibility and resolving conflicts and ambiguities. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999). The ALJ also has a duty to make the requisite findings to support her conclusion at Step Four. <u>Pinto</u>, 249 F.3d at 844. However, the duty to inquire and make findings regarding a claimant's impairment as it relates to an ability to perform past work does not mean that the initial burden of proving a disability by showing an inability to perform past relevant work has been removed from the claimant. <u>Clem v. Sullivan</u>, 894 F.2d 328, 331-32 (9th Cir. 1990).

2. <u>Analysis</u>

In Issue 2, Plaintiff contends the ALJ erred in finding she could perform her past relevant work as a merchandise displayer. Jt. Stip. at 34-37. In her work activity report, Plaintiff indicated she worked as a sales associate at a home department store for approximately 10 months during the time she

19

claimed she was disabled, from March 2014 through January 2015, for up to 30 hours a week. AR 19-20, 282. She also told Dr. Laura Beard that she worked in that capacity 30 hours a week. AR 411.

The VE testified that Plaintiff's past relevant work was classified as a merchandise displayer (DOT 298.081-010). The VE testified that a person with Plaintiff's vocational profile and RFC could perform this work. AR 25, 43-45.

Based on Plaintiff's earnings records, regulations, and the Program Operations Manual System ("POMS"), the ALJ found Plaintiff performed the work at the substantial gainful activity level. AR 19-20, 202-09. The ALJ also found, based on that finding and the VE's testimony, Plaintiff was able to perform her past relevant work as actually and generally performed. AR 25.

Plaintiff fails to challenge any of the above evidence. Jt. Stip. at 34-35. She simply states the ALJ erred by "picking this work" and failing to compare it to the RFC. Id. at 35. But Plaintiff does not explain how the merchandise displayer position conflicts with a full-range-of-work RFC. AR 22. Although the RFC contained a limitation based on Plaintiff's mental health that precluded her from frequent detailed and complex tasks, and no more than frequent interaction with people of brief-and-casual nature, Plaintiff fails to explain how that limitation conflicts with the position or otherwise precludes her from displaying merchandise. Although the written decision dealt with the question without a great deal of analysis, the ALJ made an adequate finding that Plaintiff's RFC did not preclude her from holding her former job. AR 19-20, 25. See Pinto, 249 F.3d at 845; Carmickle, 533 F.3d at 1166.

Moreover, although not entirely clear, Plaintiff appears to allege for the first time in the reply she cannot perform the job as actually performed. See Jt. Stip. at 36 (Plaintiff admits she "worked during a period she said she was disabled" but asserts "it did not hold"); Figueroa v. Berryhill, 2018 WL 2176386, at *4 (C.D. Cal. May 10, 2018) (plaintiff waives argument raised for

20

first time in reply portion of joint stipulation); Shaw v. Colvin, 2016 WL 1715058, at *2 (C.D. Cal. Apr. 26, 2016) (same). But Plaintiff ignores the ALJ's alternative finding that she could do the job as generally performed, as well as the VE's testimony about her past relevant work and DOT classification, and the VE's indication that her testimony was consistent with the DOT. AR 43-45; See Centanni v. Berryhill, 729 F. App'x 560, 563 (9th Cir. 2018) (error in concluding claimant actually performed past relevant work harmless because ALJ properly relied on VE testimony that position is generally performed at medium exertional level); Bayliss, 427 F.3d at 1218 (finding "VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required."); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (VE testimony is useful in determining whether a claimant can perform past work).

Plaintiff has failed to meet her burden of demonstrating that she can no longer perform her past relevant work. See Carmickle, 533 F.3d at 1166; Pinto, 249 F.3d at 845. Accordingly, reversal is not warranted.

**E.    Other Work**

In Issue 3, Plaintiff argues the ALJ improperly found she could perform other work in significant numbers at Step Five. Jt. Stip. at 37-39, 41. As noted, at Step Five, the ALJ considered Plaintiff's age as a "younger individual," her education, work experience, and RFC, and the VE's testimony, and concluded Plaintiff could perform the jobs of linen room attendant, hospital cleaner, housekeeping cleaner, and salvage laborer. AR 26-27.

Because the Court found no error in the ALJ's Step-Four finding that Plaintiff could perform her past relevant work, any alleged error with regard to the Step-Five determination is harmless. See Stout, 454 F.3d at 1055 (error is harmless when it occurs in a step the ALJ was not required to perform); Gomez v. Colvin, 2014 WL 4259487, at *8 (D. Ariz. Aug. 29, 2014) (Step

21

Five determination moot or harmless in light of court's determination that ALJ properly found claimant could perform past relevant work at Step Four); Kimmel v. Astrue, 2012 WL 680332, at *4 (C.D. Cal. Mar. 1, 2012) ("[Because] the Court finds no error with regard to the Step Four analysis, the issue concerning alleged error with regard to the Step Five process is effectively mooted"); Vargas v. Astrue, 2011 WL 488870, at *3 (C.D. Cal. Feb. 3, 2011) (same).

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: December 21, 2018

JOHN D. EARLY
United States Magistrate Judge